PLUNGER ELEVATOR CO. v. PARK et al.

(Circuit Court of Appeals, Third Circuit. February 12, 1912.)

No. 1,527.

PATENTS (§ 328*)—INFRINGEMENT—VALVE CONTROLLER FOR ELEVATORS.

The Jansson patent, No. 777,635, for mechanism for operating automatic valves on elevators, *held* not infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Suit in equity by the Plunger Elevator Company against William G. and David E. Park. Decree for defendants, and complainant appeals. Affirmed.

Frank T. Brown and Francis A. Hopkins, for appellant.

Edwards, Sager & Wooster, for appellees.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case the Plunger Elevator Company, owners of patent No. 777,635, granted December 13, 1904, to Jansson, for mechanism for operating automatic valves on elevators, charged William G. Park et al. with infringing claims 17, 18, 19, and 21 thereof, in the use by them of an elevator built by the Standard Plunger Elevator Company, under patent to Larsson, No. 924,798. The court below found the respondents did not infringe, and entered a decree dismissing the bill. Thereupon complainant appealed.

The case is wholly one of fact, and no legal principles are involved. As the opinion below fully discusses the device, we limit ourselves to a brief statement of the conclusions we have reached. In automatic devices for stopping elevators, the factor of safety is the positive control of the elevator valve, which will absolutely insure stoppage of the car before it strikes the upper or lower end of the inclosing frame. A merely relative or retarded valve control will not prevent accidents. The patent in question recognized the necessity of positive valve control and claimed to have solved it, saying:

"The chief object of my invention is to provide a simple and *positive* device for operating such valve at *predetermined* points," etc.

Moreover, the patentee's device sought to control the movement of the car, at both the upper and lower end of the car run by the use of a single rope connection between the car and the valve controller—a simplified mechanism, which, if successful, was very valuable. But his device, while theoretically workable on paper, did not prove practical in operation, as the court found, saying:

"Consideration of all the evidence leads to the conclusion that the design of the patent in suit will not answer the purpose for which it was intended; that is, to effect positive movement or operation of the automatic stop device. This is confirmed by the fact that although the plaintiff has installed many elevators in different parts of the country, it has not used the design of the patent in suit."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Without entering into a discussion of the mechanism by which the valve is controlled, we may add that we also find that the movement of the bight of the rope is neither positive nor always the same, and is inherently incapable of insuring that positive, absolutely essential, valve movement and control, without which the limbs and lives of passengers are endangered. Moreover, as we have said, the patent discloses a single rope between the car and the valve controller, while the respondents use duplicate rope systems, each separate, one being employed in going up, the other in going down, and the two using substantially four times as much rope as in complainant's device. This combination is, therefore, different from that of the patent.

Agreeing, as we do, with the conclusion reached by the court below, its decree is affirmed.